Case: 1:08-cv-03417 Document #: 1-2 Filed: 06/13/08 Page 1 of 15 PageID #:14

Case 1:07-cv-05119  Document 34  Filed 02/27/2008  Page 9 of 23
Case 1:07-cv-05027  Document 23  Filed 10/12/2007  Page 1 of 15

08CV3417
JUDGE LINDBERG
MAGISTRATE JUDGE COX
EDA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

BENJAMIN P. BERINGER, TONI IVANOV, )
individually and on behalf of others similarly )
situated, )
)
Plaintiffs, )
)
v. )
)
STANDARD PARKING O'HARE JOINT )
VENTURE; STANDARD PARKING )
CORPORATION, a Delaware Corporation; )
GLOBETROTTERS INTERNATIONAL, INC., )
an Illinois corporation; )
and DOES 1-10, )
)
Defendants. )
)

Hon. Rebecca R. Pallmeyer

Mag. Judge Denlow

Consolidated
07 C 5027
07 C 5119

## CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs, Benjamin P. Beringer and Toni Ivanov, individually, and on behalf of others similarly situated, by and through their attorneys, hereby complain against defendants Standard Parking O'Hare Joint Venture, Standard Parking Corporation, Globetrotters International, Inc., and Does 1-10 for violations of the Fair and Accurate Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA") and state as follows:

### PARTIES

1. Plaintiff, Benjamin P. Beringer ("Beringer") resides within the Northern District of Illinois, Eastern Division.

2. Plaintiff, Toni Ivanov, ("Ivanov," collectively with Beringer "plaintiffs") resides within the Northern District of Illinois, Eastern Division.

3. Defendant Standard Parking O'Hare Joint Venture ("O'Hare Joint Venture") is a joint venture between defendants Standard Parking Corporation and Globetrotters, Inc. O'Hare Joint Venture was the party who contracted with the City of Chicago for the management of the parking facilities at O'Hare International Airport.

4. Defendant Standard Parking Corporation ("Standard Parking") is a Delaware corporation who conducts regular and systematic business within the district, including but not

EXHIBIT A

Case: 1:08-cv-03417 Document #: 1-2 Filed: 06/13/08 Page 2 of 15 PageID #:15

Case 1:07-cv-05119   Document 34   Filed 02/27/2008   Page 10 of 23
Case 1:07-cv-05027   Document 23   Filed 10/12/2007   Page 2 of 15

limited to the transaction that is the basis of this complaint. Among other things, on information and belief, Standard Parking operates the parking facilities at O'Hare International Airport. Standard Parking also maintains an office and registered agent in Chicago, Illinois. Standard Parking is the Managing Agent of the O'Hare Joint Venture.

5. Defendant Globetrotters International, Inc. ("Globetrotters") is an Illinois corporation with its principal place of business located in Chicago, Illinois.

6. Defendants Does 1-10 are individual officers, directors, agents, and employees of defendants, who directed, participated in, or otherwise authorized the violations complained of herein.

## JURISDICTION

7. This Court has jurisdiction over the subject matter of this proceeding pursuant to the 28 U.S.C. §1331 and 15 U.S.C. §1681 *et seq*.

8. This Court has personal jurisdiction over the defendants in that Globetrotters is an Illinois Corporation, and therefore, O'Hare Joint Venture is a citizen of Illinois, and Standard Parking conducts regular and systematic business within the district.

9. Venue is proper in the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C. §1391(b) and (c) in that defendants conduct business within the District, and the transaction that is the basis of plaintiff's complaint occurred within the District.

## THE STATUTE

10. The FACTA, codified as 15 U.S.C. §1681c(g) provides:
    (g) Truncation of credit card and debit card numbers.
    (1) In general. Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.
    (2) Limitation. This subsection shall apply only to receipts that are electronically printed, and shall not apply to transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card.
    (3) Effective date. This subsection shall become effective--
    (A) 3 years after the date of enactment of this subsection [enacted Dec. 4, 2003], with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is in use before January 1,

-2-

Case: 1:08-cv-03417 Document #: 1-2 Filed: 06/13/08 Page 3 of 15 PageID #:16

Case 1:07-cv-05119   Document 34   Filed 02/27/2008   Page 11 of 23
Case 1:07-cv-05027   Document 23   Filed 10/12/2007   Page 3 of 15

2005; and
(B) 1 year after the date of enactment of this subsection [enacted Dec. 4, 2003], with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is first put into use on or after January 1, 2005. 15 U.S.C. §1681c(g).

11.  Section 15 U.S.C. § 1681n(a) of the FACTA, entitled "Civil liability for willful noncompliance" provides:

> (a) In general. Any person who willfully fails to comply with any requirement imposed under this title [15 USCS §§ 1681 *et seq.*] with respect to any consumer is liable to that consumer in an amount equal to the sum of--
> (1)   (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $ 100 and not more than $ 1,000; or
> (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $ 1,000, whichever is greater;
> (2) such amount of punitive damages as the court may allow; and
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court. 15 USCS § 1681n(a).

## THE FACTS

12.  On information and belief, the legislature enacted the FACTA because it is possible for thieves to reproduce a credit card number by using the expiration date and the last four digits of the card number. The FACTA was enacted to prevent such identity theft should discarded receipts fall into the wrong hands.

13.  As stated in 15 U.S.C. § 1681c(g)(3), the FACTA provided persons who accept credit cards or debit cards up to three years to comply with its requirements. All persons covered under the act were to come into full compliance with the provisions therein no later than December 4, 2006.

14.  On information and belief, defendants are a "person that accepts credit cards or debit cards for the transaction of business" as defined by the FACTA.

15.  Nevertheless, since December 4, 2006, each plaintiff has, on one or more occasions, used their credit card at the O'Hare International Parking facility operated by defendants and in

-3-

Case: 1:08-cv-03417 Document #: 1-2 Filed: 06/13/08 Page 4 of 15 PageID #:17

Case 1:07-cv-05119   Document 34   Filed 02/27/2008   Page 12 of 23
Case 1:07-cv-05027   Document 23   Filed 10/12/2007   Page 4 of 15

return received an electronically printed receipt that contained eight digits of their credit card number and the expiration date of their credit card.

16. Defendants have knowingly and willfully violated the provisions of the FACTA set forth above, and in doing so has failed to protect plaintiffs and others similarly situated against identity theft, credit card and debit card fraud by acting in breach of the FACTA.

## CLASS ALLEGATIONS

17. Plaintiffs bring this action on individually and as a Class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of the following Class:

18. The class is defined as all consumers whom used their credit card or debit card in any transaction occurring after December 4, 2006, at an O'Hare International Airport parking facility operated or controlled by defendants and were provided an electronically printed receipt at the point of sale or transaction, which like plaintiffs, displays either more than the five digits of the person's credit card or debit card number, and/or the expiration date of the person's credit card or debit card.

19. The class is so numerous that joinder of each of the individual members in one action not be practical. O'Hare International Airport is one of the busiest airports in the world, servicing thousands of customers on a daily basis, untold percentages of which use the parking facilities. Standard Parking's website suggests that there are 22,505 parking spaces at O'Hare International Airport. Since December 4, 2006, defendants have likely has provided thousands, of electronically printed receipts that violate the provisions of the FACTA complained herein.

20. Plaintiffs' claims are typical of the claims of all of the class members; all claims are based upon the same violation of the same Federal statute alleged to have occurred since December 4, 2006. Plaintiffs adequately and fairly represent the Class members. Plaintiffs do not have any interests that conflict with the interests of the Class members. In addition, plaintiffs have retained experienced counsel to assist in the adjunction of this matter.

21. Common questions of law and fact exist that affect all of the Class members, which predominate over questions that may affect individual members that include:

-4-

Case: 1:08-cv-03417 Document #: 1-2 Filed: 06/13/08 Page 5 of 15 PageID #:18

Case 1:07-cv-05119 Document 34 Filed 02/27/2008 Page 13 of 23
Case 1:07-cv-05027 Document 23 Filed 10/12/2007 Page 5 of 15

(a) Whether defendants have a business practice of providing its customers with an electronically printed receipt on which defendants have printed either more than five digits of the credit card or debit card number and/or the expiration date of the credit card or debit card;

(b) Whether defendants' actions alleged herein have thereby violated the provisions of the FACTA;

(c) Whether the conduct of defendants was willful; and

(d) Determining the identity and involvement of the Doe defendants.

22. The Class action form is superior to other available methods for the fair and efficient adjudication of this controversy and the claims of the Class members as the amount in controversy makes individual action economically unfeasible.

## VIOLATIONS

23. On information and belief, defendant willfully violated 15 U.S.C. §1681c(g)(1) set forth above. Those provisions provide in pertinent part that:

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the card holder at the point of sale or transaction. 15 U.S.C. §1681c(g)(1).

24. Pursuant to 15 U.S.C. §1681c(g)(3)(B), machines that were put to use after January 1, 2005 required immediate compliance with the provisions of 15 U.S.C. §1681c(g)(1).

25. For machines that were put into use before January 1, 2005, the specific provisions of 15 U.S.C. §1681c(g)(3)(B) required compliance with 15 U.S.C. §1681c(g)(1) on or after December 4, 2006.

26. As stated, defendants are merchants that accept credit cards and/or debit cards within the meaning of the FACTA in the course of transacting business with persons like plaintiffs and the Class members. During the course of transacting business, defendants use cash register and/or other machines that electronically print receipts for credit card and/or debit card transactions as defined in the FACTA.

-5-

Case: 1:08-cv-03417 Document #: 1-2 Filed: 06/13/08 Page 6 of 15 PageID #:19

Case 1:07-cv-05119   Document 34   Filed 02/27/2008   Page 14 of 23
Case 1:07-cv-05027   Document 23   Filed 10/12/2007   Page 6 of 15

27. Despite the specific provisions of the FACTA, and the three years it provided for compliance, after December 4, 2006, the effective date of the statute, defendants, at the point of sale or transaction, provided plaintiffs and each Class member with one or more electronically printed receipts on which defendant printed more than five digits of the credit card or debit card number and/or printed the expiration date of the credit or debit card.

28. When the legislature enacted the FACTA in 2003, it gave merchants who accept credit card and/or debit cards up to three years to comply with its requirements. As stated, the FACTA required compliance with its provisions for all machines no later than December 4, 2006.

29. On information and belief, defendants knew or should have known of the requirements of the FACTA prohibiting the printing of more than five digits of credit card numbers and/or expiration dates on credit card or debit card receipts.

30. Moreover, years ago, VISA, MasterCard, and other entities began informing retailers of the need to truncate credit card information to comply with various state laws, with the credit card companies' policies, and/or FACTA. In fact, as early as July 2003, VISA implemented new operations regulations, applicable to new cash registers, in response to legislation in other states requiring suppression of the expiration date and some digits of the credit card number, requiring similar suppression of such information for VISA transactions.

31. On information and belief, in addition to MasterCard and VISA, the PCI Security Standards Council – a consortium founded by the major credit card companies– and other companies that sell cash registers and other machines for the processing of credit or debit card payments, and other entities informed defendants about the provisions of the FACTA, including the specific requirements prohibiting the printing of more than five digits of credit card numbers and/or expiration dates on credit card or debit card receipts and that defendant needed to comply with those provisions.

32. On information and belief, the FACTA's requirements were widely publicized among retailers and the public at large.

Case: 1:08-cv-03417 Document #: 1-2 Filed: 06/13/08 Page 7 of 15 PageID #:20

Case 1:07-cv-05119    Document 34    Filed 02/27/2008    Page 15 of 23
Case 1:07-cv-05027    Document 23    Filed 10/12/2007    Page 7 of 15

33. Indeed, on information and belief, most of defendants' competitors readily brought their credit card and debit card receipt printing process into compliance with the FACTA. Defendants could have done the same without difficulty. On information and belief, it would have been a simple task for defendants to either reprogram their machines to not violate those provisions hereto complained, or purchase new machines that did not violate the FACTA.

34. However, defendants ignored all of these warnings, as well as the terms of the FACTA itself and continued to print prohibited information on customer receipts. These violations were not an accident or an isolated oversight. Rather, defendants knowingly, intentionally, or at least recklessly continued to use cash register or other machines that were not programed to, or otherwise did not, comply with the requirements as set forth in the FACTA.

35. Defendants knew that its receipt printing practice contravened the rights of consumers under the FACTA, or, at least recklessly disregarded whether its practice violated its customers' rights. Defendants have willfully violated the provisions of the FACTA and continued to use cash registers or other machines or devices that print receipts that violate the requirements complained of herein.

36. For example, in response to earlier state legislation enacting similar truncation requirements, on March 6, 2003, the CEO of Visa USA, Carl Pascarella, explained that "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether. . . . The first phase of this new policy goes into effect July 1, 2003 for all new terminals. . . . ." "Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference With Sen. Dianne Feinstein," PR Newswire, March 6, 2003.

37. Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

38. The card issuing organizations proceeded to require compliance with FACTA

-7-

Case: 1:08-cv-03417 Document #: 1-2 Filed: 06/13/08 Page 8 of 15 PageID #:21

Case 1:07-cv-05119   Document 34   Filed 02/27/2008   Page 16 of 23
Case 1:07-cv-05027   Document 23   Filed 10/12/2007   Page 8 of 15

by contract, in advance of FACTA's mandatory compliance date.

39. For example, the August 12, 2006 edition of "Rules for Visa Merchants" (p. 62), which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all." These statements were accompanied by a picture of a receipt showing precisely what had to be removed. VISA required complete compliance by July 1, 2006, five months ahead of the statutory deadline.

40. Defendant accepts Visa cards and is a party to a contract requiring compliance with the above-quoted requirement.

41. American Express has a manual that contains a similar depiction of what information must be suppressed.

42. These requirements were widely publicized. The following are illustrative.

43. On July 9, 2003, L. Richard Fischer of VISA USA presented a written statement to the House Committee on Financial Services supporting the truncation requirements of what ultimately became FACTA. Mr. Fischer stated:

> Although Visa generally believes that the details of preventing identity theft should be left to financial institutions that are best suited to address ever evolving fraud techniques, Title II could provide important benefits to consumers and financial institutions alike by establishing workable identity theft provisions and ensuring that these provisions benefit from national uniformity. For example, Section 203 of Title II would prohibit any merchant or other entity that accepts credit and debit cards from printing more than the last four digits of the card account number *or the expiration date* upon receipts provided to cardholders at the point of sale

44. The Office of Thrift Supervision of the Treasury Department ("OTS"), is responsible,

*inter alia*, for compliance with FACTA by federal savings banks. Toward this end, the OTS publishes an Examination Handbook for OTS field personnel to use when they perform an examination, or compliance audit, of a given financial institution. The February 2006 edition of the Handbook states:

**Truncation of Credit and Debit Card Account Numbers**

-8-

Case: 1:08-cv-03417 Document #: 1-2 Filed: 06/13/08 Page 9 of 15 PageID #:22

Case 1:07-cv-05119    Document 34    Filed 02/27/2008    Page 17 of 23
Case 1:07-cv-05027    Document 23    Filed 10/12/2007    Page 9 of 15

> Ensure that electronically generated receipts from ATM and POS terminals or other machines do not contain more than the last five digits of the card number and do not contain the expiration dates.

45. Heartland Payment Systems, Inc. provides credit and debit card, payroll and related processing services to restaurant, hotel and retail merchants throughout the United States, and indicates on its website that it provides services to over 137,000 merchants. In 2003, Heartland broadly disseminated a pamphlet which included the following statement:

> Your credit card terminal is now—or will soon be required by law or the bankcard associations to truncate—or limit—the information that can appear on electronically printed sales receipts.
>
> What that means is that on all cardholder numbers:
>
> o   The expiration date must be eliminated
>
> o   All but the last four numbers of the card number must be obscured. . . . .

46. In 2006, Heartland broadly disseminated a second pamphlet, which included the following statement:

> **Make every transaction a safe one.** * * * *
>
> o   The cardholder's receipt *should not include* the card's expiration date and *should only include* the last 4 or 5 digits of the card number. * * * *

47. Another credit card processor, Commerce Bank, sent "Merchant Compliance Awareness" notices to its customers during 2004. These stated that all but the last four digits of the cardholder account number and the entire expiration date had to be suppressed from the receipt.

48. Many restaurant and retail trade associations apprised their merchant members that FACTA imposed truncation requirements mirroring Visa's truncation requirements. For example, the Virginia Retail Merchants Association reported in its February/March 2005 Newsletter that "FACTA says receipts for credit and debit card transactions may not include more than the last five digits of the card number or expiration date."

49. In the April 23, 2003 edition of the monthly magazine for the National Association

Case: 1:08-cv-03417 Document #: 1-2 Filed: 06/13/08 Page 10 of 15 PageID #:23

Case 1:07-cv-05119    Document 34    Filed 02/27/2008    Page 18 of 23
Case 1:07-cv-05027    Document 23    Filed 10/12/2007    Page 10 of 15

of Convenience Stores, an article titled "Visa USA Targets Identity Theft," appeared which included the following statement:

> [A]t a press conference held last month with Sen. Dianne Feinstein (D-CA), Visa announced its account truncation security policy. This protects consumers from identity theft by limiting cardholders' information on receipts to the last four digits of their accounts. The policy will also eliminate the card's expiration date from receipts altogether. Feinstein has introduced legislation to combat identity theft.

50.    The April 2005 edition of the Food Industry Advisor, the newsletter for the Pennsylvania Food Merchants Association and Pennsylvania Convenience Store Council, included an article regarding the requirements of credit card truncation under FACTA which included the following language:

> [A]ccording to the FACTA Act, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.....

The same article appeared in the April 2005 Edition of the NACS Magazine, published by the National Association of Convenience Stores.

51.    In its Spring 2004 Newsletter, the Connecticut Restaurant Association Newsletter included an article regarding Requirements for Credit Card Truncation, which stated:

> [T]here is currently no Connecticut state law, so the two ruling requirements come from VISA and a new Federal Fair Credit Reporting Act signed in December 2003.
>
> Truncation requires that all but the last four digits of the cardholder account number, along with the entire expiration date, be suppressed on the cardholder copy of the transaction receipt generated from all electronic terminals....

52.    After the enactment of FACTA, the Wisconsin Restaurant Association issued a "Credit Card Transaction" Alert to its members, which stated:

> You may have been hearing about credit card truncation lately. This is what you need to know.
>
> Credit card truncation removes all but the last four (or five) digits of a credit card account number ad the expiration date from the sales receipt. For example: A non-truncated receipt would list:
>
> Acct. #  1234 5678 7654 3210 Exp. 10/05
>
> while a truncated receipt would show:

-10-

Case 1:07-cv-05119   Document 34   Filed 02/27/2008   Page 19 of 23
Case 1:07-cv-05027   Document 23   Filed 10/12/2007   Page 11 of 15

Acct. # **** **** **** 3210 Exp ****. . . . .

> The federal Fair and Accurate Credit Transaction Act of 2003, prohibits any person that accepts credit cards or debit cards from printing the expiration date and more than the last five digits of the card number upon any terminal-generated receipt provided to the cardholder at the point of sale....

53.     In the January 2005 edition of the Massachusetts Restaurant Association Newsletter, an article appeared apprising Association members that both Visa and MasterCard require truncation of the entire expiration date and all but the last four digits of the cardholder account number.

54.     Similar information was disseminated by the Ohio Restaurant Association, the Oklahoma Restaurant Association, and a significant number of other restaurant trade associations, and retail merchant trade associations.

55.     In the March/April 2006 Edition of the Ohio Independent Automobile Dealers' Association Dealer News Magazine, an article was published entitled "What You Should Know about Credit and Debit Card Processing and the FACTAs about Card Truncation." The article states:

> What is Card Truncation? This federal law sets deadlines by which the receipt electronically printed from a credit card sale must be truncated—meaning, the receipt given to the customer shows no more than the last five digits of the customer's credit card number and does not show the expiration date.
>
> Business owners are responsible for merchant account compliance with the truncation regulations and must make sure their printed cardholder receipts do not contain expiration dates or full account numbers.

This same article appeared in the March/April edition of the West Coast Independent Automobile Dealer News.

56.     The Independent Insurance Agents & Brokers of America circulated a report to its members dated June 5, 2005 titled: "Overview of the Fair Credit Reporting Act, The Fair and Accurate Credit Transactions Act, and the Drivers Privacy Protection Act." In relevant part, this publication stated:

> Under the FACT Act, businesses and others accepting credit or debit cards for payment may not print more than the last five digits of the card number nor may they

-11-

Case: 1:08-cv-03417 Document #: 1-2 Filed: 06/13/08 Page 12 of 15 PageID #:25

Case 1:07-cv-05119   Document 34   Filed 02/27/2008   Page 20 of 23
Case 1:07-cv-05027   Document 23   Filed 10/12/2007   Page 12 of 15

print the expiration date upon any receipt provided to the cardholder at the point of sale.

57.  The November 18, 2004 edition of the Compliance Challenge, published by the Credit Union National Association News, stated: "FACTA prohibits anyone that accepts credit/debit cards to print more than the last 5 digits of the card number or expiration date on any receipt at the point of sale or transaction...."

58.  In the October 10, 2003, edition of the PT Bulletin, a Newsletter for the American Physical Therapy Association, an article appeared titled, "Truncation Requirement Now in Effect for Credit Card Processing." In relevant part, this article stated:

> Physical therapists who accept credit card payments from patients and clients face new processing requirements from major credit card companies. In an effort to minimize opportunities for credit card fraud, Visa and MasterCard...have mandated that credit card account numbers and expiration dates be masked on all receipts. Compliance with this requirement is not optional....

59.  Truncation standards, including the standards reflected in the Visa Merchant Rules and in FACTA, permit the publication of the last four or five digits of customer account numbers on the receipt presented to customers at the point of sale. The publication of this minimal amount of account information is necessary to facilitate merchant account reconciliation, processing of returns, etc. In isolation, the publication of *only* the last four or five digits of a customer account number significantly limits the extent to which a potential identity thief can effectively use customer receipts disseminated at the point of sale to facilitate identity theft.

60.  The publication of expiration dates on customer receipts disseminated at the point of sale, *in addition to* the last four or five digits of the customer account number, exponentially increases the possibility of identity theft, which is the obvious reason that Visa, and then Congress, requires the truncation of expiration dates.

61.  Credit and debit card account numbers are not randomly generated. Instead, account numbers reflect an internal coding scheme set forth by the International Organization for Standardization ("ISO") 7812, which defines the content in the cards' magnetic strips. Consistent

-12-

Case: 1:08-cv-03417 Document #: 1-2 Filed: 06/13/08 Page 13 of 15 PageID #:26

Case 1:07-cv-05119  Document 34  Filed 02/27/2008  Page 21 of 23
Case 1:07-cv-05027  Document 23  Filed 10/12/2007  Page 13 of 15

with this standard, every credit card number consists of the following: (a) a single digit Major Industry Identifier ("MII"); (b) an issuer identification number ("IIN"); (c) an number unique to the card; and (d) a check digit.

62. The MII identifies the industry of the issuer of the card..

63. The IIN consists of the first six digits of the card number and identifies the specific issuer of the card.

64. The seventh through next to the last digit, up to a maximum of 12 digits, is the number unique to the card.

65. The last digit is a "check digit" that is not randomly assigned, but instead is calculated by a defined algorithm. Therefore, the "check digit" is derivative of the other numbers in the credit card number.

66. Astute identity thieves are familiar with this coding paradigm and can use sophisticated mathematical modeling to decipher account numbers.

67. To the extent that an identity thief is able to decipher a credit card user's account number, the importance of truncating expiration dates becomes manifest. That is, unlike the account number on the credit or debit card, the expiration date cannot be deciphered through sophisticated mathematical modeling. Therefore, the expiration date is an important security check that corroborates that a person attempting to use a given account number is actually the authorized user of the card.

68. The expiration dates are also used to confirm that a person making a purchase over the phone or on the internet actually has the card in their possession.

69. Banks and credit card associations (i.e. Visa, MasterCard, American Express, etc.) are keenly aware of the importance of truncating expiration dates.

70. In addition, a would be identity thief who steals a receipt containing the last four or five digits of a credit card account number *and* an expiration date can use that data in an attempt to dupe the cardholder, or other potential information sources, into disclosing additional confidential

-13-

financial information relating to the cardholder. The more information that is disclosed on the receipt, the easier it is to pilfer additional confidential financial information.

71. The costs of truncating credit and/or expiration dates and account numbers is minimal.

72. Most of defendant's business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement. Defendant could have readily done the same.

73. Defendants willfully disregarded FACTA's requirements and continued to use cash registers or other machines or devices that print receipts in violation of FACTA.

## JURY DEMAND

74.. Plaintiffs demand a jury on all issues so triable.

WHEREFORE, Plaintiffs, Benjamin P. Beringer and Toni Ivanov individually and on behalf of other similarly situated, request this Honorable Court enter judgment in favor of plaintiffs and the Class members and against defendants as follows:

(a) Statutory damages pursuant to 15 U.S.C. § 1681n(a);

(b) Pursuant to 15 U.S.C. § 1681n(a)(3), attorney's fees, litigation expenses, and costs;

(c) Such other relief as the Court deems equitable and just under the circumstances.

s/Daniel A. Edelman
Daniel A. Edelman

Daniel Lynch (Ill. Bar No. 6202499)
Henry Baskerville (Ill. Bar No. 6285712)
The Law Offices of Daniel Lynch
150 South Wacker Dr., Suite 2600
Chicago, Illinois 60606
312-346-8700 (tel) / 312-346-5180 (fax)

Case: 1:08-cv-03417 Document #: 1-2 Filed: 06/13/08 Page 15 of 15 PageID #:28

Case 1:07-cv-05119   Document 34   Filed 02/27/2008   Page 23 of 23
Case 1:07-cv-05027   Document 23   Filed 10/12/2007   Page 15 of 15

Oren S. Giskan
Giskan, Solotaroff, and Anderson, LLP
11 Broadway, Suite 2150
New York, NY 10004
212-847-8315 (tel) / 646-520-3237 (fax)

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Zachary Jacobs
Edelman, Combs, Latturner & Goodwin, LLC
120 South LaSalle Street, 18th Floor
Chicago, IL 60603
312-739-4200 (tel) / 312-419-3079 (fax)